**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0700-WJM

EVA GUADALUPE KHALING,

      Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

      Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This matter is before the Court on review of the Commissioner of the Social

Security Administration Andrew M. Saul's (the "Commissioner") decision denying

Plaintiff Eva Guadalupe Khaling's application for disability insurance benefits. Plaintiff

filed an Opening Brief on August 2, 2019 (ECF No. 17), and the Commissioner filed a

Response on August 23, 2019. For the reasons that follow, the Commissioner's

decision denying Plaintiff's application for disability insurance benefits is vacated, and

this case is remanded for further proceedings consistent with this Order.

### I. BACKGROUND

On March 29, 2016, Plaintiff applied for disability insurance benefits, alleging a

disability onset date of March 21, 2016. (Administrative Record ("R.") (ECF No. 10) at

12.) Plaintiff was born in March 1970 and was 45 years old on the alleged onset date.

(R. at 63.) Plaintiff premised her application for benefits on the following medical

conditions: migraines with neck pain; myofascial pain syndrome, adjustment disorder

with mixed anxiety and depression, diabetes type 2, plantar fascitis, osteoarthritis, piriformis syndrome, and left trochanteric bursitis.  (R. at 63–64.)

Plaintiff's application initially was denied on July 7, 2016.  (R. at 12.)  Thereafter, Plaintiff requested a hearing in front of an administrative law judge ("ALJ"), and that hearing took place on January 16, 2018.  (R. at 25.)

## II.  THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated April 30, 2018. (R. at 24.)  In the sequential evaluation process required by law,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (R. at 14.)  At step two, the ALJ found that Plaintiff has the following severe impairments: congenital fused vertebrae (Kleppel-Feil Snydrome); degenerative disc disease of the cervical spine; peripheral neuropathy; right hand metacarpal bosses; migraines; fibromyalgia; mild obstructive sleep apnea; bilateral plantar fascitis; and hypermobility syndrome.  (R. at 15.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  (R. at 17.)  Specifically, the ALJ found that Plaintiff's impairments did not meet or medically equal the impairments referred to in Listings 1.02, 1.04, 3.00 *et seq.*,

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1998).  The claimant has the burden of proof through steps one to four; the Commissioner has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

and 11.14.  (*Id.*)

As to Plaintiff's residualfunctional capacity ("RFC"), the ALJ found as follows:

> [T]he claimant has the residual functional capacity to
> perform sedentary work as defined in 20 CFR 404.1567(a)
> except the claimant can never climb ladders, ropes, or
> scaffolds.  The claimant can frequently stoop, and can
> occasionally kneel, crouch, and crawl.  The claimant can
> frequently handle and occasionally finger.  The claimant can
> occasionally reach overhead.  The claimant can never be
> exposed to unprotected heights, heavy machinery, or
> moving mechanical parts.

(R. at 17.)

At step four, the ALJ determined that Plaintiff is unable to perform any past

relevant work.  (*Id.* at 23.)  At step five, taking into account Plaintiff's age (49),

education, work experience, and RFC, the ALJ determined that there are jobs that exist

in significant numbers in the national economy that Plaintiff can perform.  (R. at 22.)

Based on the hearing testimony from a vocational expert, the ALJ determined that

Plaintiff could perform such jobs as "surveillance system monitor," "call out operator,"

and "charge account clerk."  (R. at 23.)  Consequently, the ALJ found that Plaintiff "is

not disabled under sections 216(i) and 223(d) of the Social Security Act."  (R. at 24.)

### III.  LEGAL STANDARD

The Court's review of a determination that a claimant is not disabled is limited to

determining whether the record contains substantial evidence to support the

Commissioner's decision and whether the correct legal standards were applied.

*Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir.

1992).  "Substantial evidence is more than a mere scintilla and is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial

if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine

the record as a whole, including anything that may undercut or detract from the ALJ's

findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d

at 1262. However, the Court "may not reweigh the evidence nor substitute [its]

judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.

1994). Additionally, "[t]here are specific rules of law that must be followed in weighing

particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244

(10th Cir. 1988). "Failure to follow these rules constitutes reversible error." *Id*.

## IV. ANALYSIS

Plaintiff argues, among other things, that the ALJ failed to properly evaluate

whether her severe medical impairments meet or medically equal a listed impairment at

step three of the sequential evaluation process. (ECF No. 17 at 3.) The Court agrees,

and therefore will vacate and remand the decision of the Commissioner denying

Plaintiff's application for disability insurance benefits.

## A. Step Three

At step three, the ALJ stated as follows:

> The claimant has not alleged nor does the medical evidence
> of record establish the presence of any impairments or
> combination of impairments of listing level severity. The
> undersigned has given special consideration to listings
> relative to musculoskeletal impairments (Listings 1.02 and
> 1.04), respiratory impairments (Listing 3.00, *et seq.*), and

neurological impairments (Listing 11.14) and does not find the presence of any criteria set forth in said listings to warrant a finding that the claimant's impairments meets or equals a listing.

With respect to the claimant's fibromyalgia, it cannot meet a listing because it is not a listed impairment. The undersigned has considered the entire adult Listings because fibromyalgia may cause symptoms or complications that are similar to other impairments considered under the Listing of Impairments. The undersigned finds that the claimant's fibromyalgia does not equal a listing, or medically equal a listing in combination with at least one other medically determinable impairment (SSR 12-2p).

(R. at 17.)

Social Security regulations provide that, at step three of the sequential evaluation process, if a claimant has "an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. § 404.1520(a)(4)(iii). An ALJ must "discuss the evidence or [her] reasons for determining that appellant was not disabled at step three." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *see also Henderson v. Astrue*, 383 F. App'x 700, 701–03 (10th Cir. 2010) (reversing the district court's affirmance of the ALJ's decision, under *Clifton*).

While the ALJ stated that she gave "special consideration" to Listings 1.02, 1.04, 3.00 *et seq.*, and 11.14, the ALJ discussed neither the evidence nor the reasons from which she concluded that Plaintiff's impairments she found to be severe did not meet or medically equal those listings. As such, under *Clifton*, 79 F.3d at 1009, the ALJ committed legal error. However, "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a

claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). In other words, when "confirmed or unchallenged findings made elsewhere in the ALJ's decision . . . conclusively preclude [Plainitff]'s qualification under the listings at step three" such that "[n]o reasonable factfinder could find otherwise," the ALJ's error at step three is harmless. *Id.* at 734–35.

In the Court's view, the ALJ's findings at steps four and five of the sequential evaluation process do not "conclusively preclude" Plaintiff's severe impairments meeting or medically equaling Listing 1.04 (disorders of the spine) singly or in combination. Because, in addition, there is evidence in the record from which a reasonable factfinder could conclude that Plaintiff's impairments meet Listing 1.04, the ALJ's error at step three was not harmless. *See Henderson v. Astrue*, 383 F. App'x 700, 702 (10th Cir. 2010).

**B.      The ALJ's Findings at Steps Four and Five**

As recounted above, after the ALJ determined that Plaintiff's impairments do not meet or medically equal a listing, the ALJ determined (1) Plaintiff's RFC, (2) that Plaintiff could not perform any past relevant work, and (3) that Plaintiff could perform certain other jobs that exist in sufficient numbers in the national economy. (R. at 17–24.) None of these findings foreclose the possibility that Plaintiff's impairments meet Listing 1.04.

Listing 1.04 refers in relevant part to:

> Disorders of the spine (e.g., herniated nucleus pulosus,
> spinal arachnoiditis, spinal stenosis, osteoarthritis,
> degenerative disc disease, facet arthritis, vertebral fracture),
> resulting in compromise of a nerve root (including the cauda

equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by
> neuro-anatomic distribution of pain, limitation of motion of
> the spine, motor loss (atrophy with associated muscle
> weakness or muscle weakness) accompanied by sensory or
> reflex loss and, if there is involvement of the lower back,
> positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

In the RFC determination, the ALJ found that Plaintiff was capable of, at a

maximum, sedentary work. (R. at 17.) This finding undoubtedly does not foreclose, for

example, limitation of motion of the spine or muscle atrophy. The ALJ further found

that Plaintiff can "frequently stoop" and "occasionally kneel, crouch, and crawl" (*id.*), but

again, this does not "conclusively preclude" Plaintiff having limitation of motion of the

spine—let alone, for example, muscle atrophy. The same can be said of the ALJ's

findings that Plaintiff "can frequently handle and occasionally finger," "occasionally

reach overhead," and that Plaintiff "can never be exposed to unprotected heights,

heavy machinery, or moving mechanical parts." (*Id.*) The ALJ's findings of specifically

which jobs Plaintiff could perform was based on that RFC, and accordingly, those

findings also do not preclude Plaintiff from meeting Listing 1.04.

While the ALJ discussed the medical record in some detail, there is nothing else

in the ALJ's decision, beyond the weighing of opinion evidence, that can reasonably be

construed as an evidentiary "finding." *See Rivera v. Colvin*, 2016 WL 9489143 (D.N.M.

Nov. 10, 2016) ("[T]he ALJ's narrative consists almost entirely of what is effectively a

simple recitation of selected portions of medical records, and is largely without actual

'findings.'").  And it is also clear that none of the medical opinions the ALJ gave weight to forecloses Plaintiff's impairments meeting Listing 1.04.

**C.    Medical Evidence Supporting Plaintiff's Impairments Meeting Listing 1.04A**

Based on the medical evidence referenced below, the Court concludes that a reasonable factfinder could have found that Plaintiff's impairments satisfy Listing 1.04. As a result, the ALJ's failure to adequately explain why she found Plaintiff's impairments to not meet Listing 1.04 was not harmless error.  *See Henderson*, 383 F. App'x at 702 (citing *Fischer-Ross*, 431 F.3d at 733–34).

To meet Listing 1.04, Plaintiff must suffer from a disorder of the spine.  The ALJ explicitly found that Plaintiff suffered from congenital fused cervical vertebrae ("Kleppel-Feil syndrome") and degenerative disc disease of the cervical spine.  (R. at 14.)  These impairments are plainly sufficient to meet this threshold requirement of Listing 1.04.

Listing 1.04A, at issue here, further requires Plaintiff show (1) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain"; (2) "limitation of motion of the spine"; (3) "motor loss (atrophy with associated muscle weakness or muscle weakness)"; (4) "sensory or reflex loss"; and (5) "if there is involvement of the lower back, positive straight-leg raising tests (sitting and supine)."  The record evidence relevant to these elements of Listing 1.04A will be addressed in turn.

1.    <u>Nerve Root Compression / Neuro-Anatomic Distribution of Pain</u>

Treatment notes from a November 2016 visit with Dr. Lars Widdel, M.D., state that Plaintiff's "degenerative disc and facet disease at C2-C3 and C4-C5, . . . correlate with [Plaintiff]'s C6 radiculopathy noticed on a recent EMG, suggesting that potentially this disc herniation is somewhat dynamic, intermittently irritating the corresponding

nerve root." (R. at 455.) Cervical radiculopathy, referenced by Dr. Widdel, "is a clinical condition resulting from compression of cervical nerve roots. Patients with radiculopathy typically present with neck pain, arm pain, or both." *Cervical Radiculopathy*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4958381 (last visited March 10, 2020).

Moreover, the ALJ expressly found that Plaintiff suffers from peripheral neuropathy (R. at 14), which, as "a result of damage to the nerves outside of the brain and spinal cord (peripheral nerves), often causes weakness, numbness and pain, usually in [the] hands and feet." *Peripheral Neuropathy*, http://www.mayoclinic.org/diseases-conditions/peripheral-neuropathy/symptoms-causes/syc-20342061 (last visited March 10, 2020). Medical records consistently reflect that Plaintiff suffers from pain and weakness in her lower and upper extremities. (*See, e.g.*, R. at 753.) Additionally, the ALJ herself found that Plaintiff can only frequently handle and occasionally finger. (R. at 17.) Accordingly, a reasonable administrative factfinder could have found that this element of Listing 1.04 was met.

2.    Limitation of Motion of the Spine

Listing 1.04 further requires that the claimant suffer from limitation of motion of the spine. Treatment notes from a visit with Dr. Randolph Reims, M.D., state that Plaintiff suffers from a "13% impairment" of range of motion of the cervical spine. (R. at 436.) Additionally, treatment notes from a visit with John F. Schultz, a chiropractor, reveal moderate or mild restrictions in Plaintiff's range of motion of the cervical spine. (R. at 310–11.)

While there is other evidence in the record that could support a finding that Plaintiff is not limited in her spinal range of motion (R. at 432), a reasonable factfinder nevertheless could have concluded that Plaintiff suffers from limitations in motion of the cervical spine.  *See Henderson*, 383 F. App'x at 702.  This is so especially given that Dr. Reims' evaluation is, by far, the most thorough and well-explained assessment of Plaintiff's limitations in this respect.  Dr. Schultz's evaluation is relatively detailed as well.

       3.       <u>Motor Loss / Atrophy with Muscle Weakness</u>

There is ample evidence in the record to support a finding that Plaintiff suffers from muscle atrophy in her hands.  Treatment notes from an October 2017 with Dr. Avrom Kurtz, M.D., state that "the patient has had some mild atrophy in her right hand and does have some slight weakness on her grip as well as arm extension on her exam today."  (R. at 717.)  Dr. Amy Susnow, M.D., also noted that Plaintiff has "mild atrophy in the right hand as well as weakness in right hand grip" (R. at 723), and "muscle wasting" in the right hand (R. at 726).  Further, treatment notes from a visit with Dr. Michael Margolis, M.D., reflect an assessment that Plaintiff suffers from "right hand muscle weakness" (R. at 657), and treatment notes from an August 2017 visit with Dr. Pamela Wanner, M.D., reflect an assessment that Plaintiff suffers from right upper extremity weakness, "likely related" to Plaintiff's Kleppel-Feil syndrome.  (R. at 685.)  It should also be noted, again, that the ALJ herself found that Plaintiff can only frequently handle and occasionally finger.  (R. at 17.)

4.  Sensory or Reflex Loss

The record also reflects that Plaintiff suffers from sensory and reflex loss.  For instance, Dr. Kurtz noted in October 2017 that Plaintiff "has diminished reflexes in her biceps, brachioradialis, as well as her knee jerks."  (R. at 716.)  Treatment notes from a November 2017 visit with Dr. Buisseret state that Plaintiff "has numbness and tingling in hands and feet."  (R. at 734.)  Dr. Julie A. Melchior, M.D., also found that Plaintiff suffers from numbness in her hands.  (R. at 753.)

5.  Involvement of the Lower Back

Finally, "if there is involvement of the lower back," Plaintiff must produce evidence of a "positive straight-leg raising test (sitting and supine)" in order to meet Listing 1.04.  The ALJ did not find, nor is there sufficient evidence in the record to definitively conclude, that Plaintiff's impairments involve her lower back. The only back-related impairments found by the ALJ were Plaintiff's congenital fused cervical verterbrae (Kleppel-Feil syndrome), and degenerative disc disease of the cervical spine.  (R. at 14.)  Additionally, for example, treatment notes from a May 2016 visit with Dr. Wanner state that Plaintiff has full range of motion of her lower back.  (R. at 408.)  A reasonable factfinder could therefore conclude that Plaintiff's impairments do not involve her lower back, and consequently, that Plaintiff was not required to produce evidence of positive straight-leg raising tests.[2]

_____

[2]  The Court also notes that the Commissioner makes no attempt to refute Plaintiff's contention that the ALJ failed to properly evaluate Plaintiff's impairments with respect to the relevant listings.

In sum, the ALJ's findings do not preclude Plaintiff's impairments meeting or medically equaling Listing 1.04A, and there is sufficient evidence in the record for a reasonable factfinder to have concluded that this specific Listing had been met or equaled by the record evidence. The ALJ's error at step three was therefore not harmless, and the decision of the Commissioner denying Plaintiff's application for benefits will be vacated, and the case remanded.

**D.     Plaintiff's Other Arguments**

Because the Court finds that the ALJ's error at step three of the disability evaluation process requires remand, it will not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties as well as the ALJ to consider the evidence and the issues anew.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS that the Commissioner's decision to deny Plaintiff disability insurance benefits is VACATED, and this case is REMANDED for further proceedings consistent with this Order.

Dated this 17th day of March, 2020.

BY THE COURT:

William J. Martinez
United States District Judge